[Civ. No. 26393. First Dist., Div. Four. Mar. 12, 1970.]

HELEN M. HOLLAND, Plaintiff and Respondent. v.
GLENDA DAVIS NELSON, et al., Defendants and Appellants.

## COUNSEL

Watson, Hoffe & Fannin, Gibson, Dunn & Crutcher, John H. Sharer and Bruce W. Owens for Defendants and Appellants.

Edward A. Friend for Plaintiff and Respondent.

## OPINION

**CHRISTIAN, J.**—Defendants Glenda Davis Nelson and Arthur Murray, Inc. appeal from a judgment for treble damages awarded against them under the Dance Act.[1]

Beginning in 1959, respondent for a three-year period took dance lessons at "Arthur Murray Dance Studio" in San Francisco. On April 13, 1962, appellant Nelson, the operator of the studio, assisted by her employee, Bob Kelly, persuaded respondent to sign a contract for $9,700 worth of further dance lessons; respondent paid for these lessons in advance the same day. Subsequently, on April 19, Kelly and another of appellant Nelson's employees, Dan Caldwell, persuaded respondent to purchase an additional $1,000 worth of services. Caldwell and Kelly were assisted in this by one Andrew Dayton, who was skilled in "closing" large transactions and was present for the purpose of persuading respondent to purchase the additional services. Respondent later received 226½ hours of instruction, valued at $10 per hour. Upon respondent's request, appellant Nelson later made refunds on these contracts between November 1962 and February 1965, in a total amount of $2,640. No refunds were made after February 1965.

In a nonjury trial it was established, without dispute, that, of the amount originally paid by respondent under the contract, $5,795 remained after deduction of the value of lessons already taken by respondent and the amounts previously refunded by appellant Nelson. Pursuant to Civil Code section 1812.94 (re-enacted as § 1812.62) the court entered judgment for

---

[1] Title 2.5 of the Civil Code, enacted in 1961. (Civ. Code, § 1812.80 et seq.; Stats. 1961, ch. 1675, p. 3641, § 1.) As originally enacted, title 2.5 concerned both dance studio lessons and health studio services. Subsequently, references to dance studio lessons were deleted from title 2.5 and re-enacted separately as title 2.4. (Civ. Code, § 1812.50 et seq.; Stats. 1969, ch. 1571, p. 3000, § 1.) For purposes of the present action, the provisions of title 2.4 are substantively identical to the dance lesson provisions formerly under title 2.5. Further references to the Dance Act will give parallel citations to the former title 2.5 (Civ. Code, § 1812.80 et seq.) and the re-enacted title 2.4 (Civ. Code, § 1812.50 et seq.).

treble the amount of actual damages and for attorneys' fees in the amount of $2,500.

Appellants contend that the one-year statute of limitations in Code of Civil Procedure section 340, subdivision 1 (action to recover statutory penalty or forfeiture), bars recovery at least of the treble damages and that recovery of actual damages is barred either by the same section or by Code of Civil Procedure section 339, subdivision 1, (action upon oral contract). Appellants further contend that, even if the three-year statute of limitations indicated by Code of Civil Procedure section 338, subdivision 1, (action on liability created by statute), is applicable, the action is barred because the statute began to run in April 1962, when the contract was executed.

Section 339, subdivision 1, is not the statute of limitations applicable to this case; respondent is pursuing a remedy which was created not by contract, but by statute. Appellants contend that section 338 is nevertheless inapplicable because the action is for recovery of a penalty or forfeiture. The question is whether the provision of the Dance Act authorizing discretionary treble damages should be considered a penalty or forfeiture within the meaning of Code of Civil Procedure sections 338 and 340.

No case has been found dealing with the period of limitation applicable under the Dance Act. It appears to us, however, that the provision in Civil Code section 1812.62, allowing to the court the option of granting judgment for treble damages, is not to be construed as converting the statutory right of action into one for penal damages. To adopt the contrary construction would either apply a shorter period of limitation than that established by Code of Civil Procedure section 338, subdivision 1, for actions on other statutory liabilities or would put a plaintiff in the position of being unable to determine which statute of limitations applies to his cause until, after trial, the court determined in its discretion whether to allow treble damages. No reason or statutory language has been pointed to by appellants suggesting that the Legislature can have intended either result. The statute now under consideration is in clear contrast to the several species of actions for penal damages recognized in Civil Code sections 3344-3347. For example, in an action for holding over by a tenant (§§ 3344 and 3345) the allowance of treble damages is, by terms of the statute, mandatory. Several cases have held statutorily provided recoveries analogous to that here in question not to be penalties or forfeitures. In *Culver* v. *Bell & Loffland* (9th Cir. 1945) 146 F.2d 29, the court determined that under the Fair Labor Standards Act (29 U.S.C.A. § 216(b)) additional recovery allowed to employees not paid the required minimum wage for overtime work did not constitute a penalty or forfeiture under Code of Civil Procedure sections 338 and 340. Similarly in *Farris* v. *San Diego Federal Sav. & Loan Assn.* (S.D. Cal. 1956) 140 F.Supp. 703, it was held that a veteran's action to re-

cover treble damages for excess consideration charged for his home was not to be considered a penalty or forfeiture and that Code of Civil Procedure section 338 applied. And in *Burnham Chemical Co.* v. *Borax Consol., Ltd.* (9th Cir. 1948) 170 F.2d 569, and *Aero Sales Co.* v. *Columbia Steel Co.* (N.D. Cal. 1954) 119 F.Supp. 693, a similar conclusion was reached with regard to an action for treble damages under the Sherman Act. ■ We conclude therefore that this is an action "upon a liability created by statute, other than a penalty or forfeiture" and the applicable period of limitation is three years, under Code of Civil Procedure section 338.

■ Appellants argue that even if section 338 applies the statute runs from the date of execution of the contract, April 1962; therefore, it is argued, the action is still barred as the complaint was not filed until March 1967. However, during a period from November 1962 to February 1965, appellant Nelson made several refunds of portions of the monies paid under these contracts, the last just before the period of limitations had expired according to appellants' theory. The circumstances in which these refunds were made, over a two-year and four-month period, support the trial court's determination that respondent reasonably expected further refunds to be made and that appellants are therefore estopped to plead the statute of limitations. ■ "One cannot justly or equitably lull his adversary into a false sense of security, and thereby cause his adversary to subject his claim to the bar of the statute of limitations, and then be permitted to plead the very delay caused by his course of conduct as a defense to the action when brought." (*Carruth* v. *Fritch* (1950) 36 Cal.2d 426, 433 [224 P.2d 702, 24 A.L.R.2d 1403].)

■ Upon a finding that appellant Murray exercised "substantial control" over appellant Nelson, the trial court held Murray liable. California courts have, under comparable facts, already held agency relationship to exist between Arthur Murray, Inc. and its licensees. (*Porter* v. *Arthur Murray, Inc.* (1967) 249 Cal.App.2d 410 [57 Cal.Rptr. 554], *Nichols* v. *Arthur Murray, Inc.* (1967) 248 Cal.App.2d 610 [56 Cal.Rptr. 728], and *Beck* v. *Arthur Murray, Inc.* (1966) 245 Cal.App.2d 976 [54 Cal.Rptr. 328]. These holdings were based upon the control features of the arrangements between Murray and its licensees. The same features are present in the case before us; the trial court's determination that an agency relationship existed must be upheld.

■ Appellant Nelson contends that responsibility for causing respondent to execute the April 1962 contract should rest not with her, but with her employees. Citing Civil Code, section 2351, appellant Nelson argues that the employees' wrongs should be imputed directly to Murray as the ultimate

principal and not to her as the agent who lawfully appointed them.[2] Even if this theory were sound, it would not apply to the facts of the present case. The evidence shows that appellant Nelson herself participated in the execution of both contracts.

Appellant Murray cites *Beck* v. *Arthur Murray, Inc., supra,* 245 Cal.App.2d 976, 982, for the principle that statutory penalties imposed in consequence of the conduct of an agent are not imputed to the principal. But such liablity does attach where the principal adopts or ratifies the acts of its agent: such ratifying conduct may consist of mere failure to discharge the agent when the challenged act comes to the attention of the principal (*Sandoval* v. *Southern Cal. Enterprises, Inc.* (1950) 98 Cal.App.2d 240 [219 P.2d 928]; *McChristian* v. *Popkin* (1946) 75 Cal.App.2d 249 [171 P.2d 85]) as well as of affirmative acts (*Schanafelt* v. *Seaboard Finance Co.* (1951) 108 Cal.App.2d 420 [239 P.2d 42]; *Farvour* v. *Geltis* (1949) 91 Cal. App.2d 603 [205 P.2d 424]). In the present case, not only did appellant Murray fail to discharge its transgressing agent, but appellant Murray itself sent respondent a request, dated May 10, 1962, for confirmation of the fact that $8,700 was then on deposit for lessons. That request shows knowledge by Murray of the unlawful transaction. By ratification appellant Murray made itself liable for treble damages based upon acts of its agent, appellant Nelson.

Appellants contend that treble damages cannot be imposed without evidence of willful and malicious violation of law. Such evidence has been required in cases brought under Code of Civil Procedure section 733 (*Caldwell* v. *Walker* (1963) 211 Cal.App.2d 758, 762 [27 Cal.Rptr. 675] [trespass for injury to trees]), and under Code of Civil Procedure section 735 (*Buck v. Morrossis* (1952) 114 Cal.App.2d 461, 467 [250 P.2d 270] [unlawful detainer]). Appellants contend that their acts were not willful and malicious, and that recovery of treble damages is precluded by analogy to the above cases. But the cited decisions speak in terms of avoiding the imposition of punitive damages upon merely negligent violators of the law. In the present case, the violations could not have been negligent; moreover the large amounts of the contracts support an inference that the violations were in this case willful. Moreover, we find nothing in the statute requiring proof of willful and malicious violation.

Appellant Nelson cites *Coy* v. *Superior Court* (1962) 58 Cal.2d 210 [23 Cal.Rptr. 393, 373 P.2d 457, 9 A.L.R.3d 678], in which the court, holding that punitive damages could not be awarded without proof of de-

---

[2]Civil Code section 2351 provides that, "A subagent, lawfully appointed, represents the principal in like manner with the original agent; and the original agent is not responsible to third persons for acts of the subagent."

fendant's ability to pay, remarked that "the trier of fact cannot measure the 'punishment' without knowledge of defendant's ability to respond to a given award." However, this rationale obviously extends only to the trier of fact's decision in determining punitive damages where they are not otherwise fixed. In the present case the amount of punitive damages which may be allowed is fixed by law (Civ. Code, § 1812.94, re-enacted as Civ. Code § 1812.62); there appears no necessity for the trier of fact to determine what amount of damages will be suitably punitive for a given defendant.

The judgment is affirmed. Respondent will recover attorney fees on appeal. We find $1,500 to be a reasonable sum; it will be added to the judgment.

Devine, P. J., and Rattigan, J., concurred.

A petition for a rehearing was denied April 9, 1970, and the petition of appellant Arthur Murray, Inc. for a hearing by the Supreme Court was denied May 6, 1970.